UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:14-cv-61376-BB

AADYN TECHNOLOGY, LLC, a Delaware
Limited Liability Company; FRANK
GALLAGHER, a New Jersey citizen; MARC
KAYE, a Florida citizen; and WALTER
LEFLER, a New Jersey citizen,

       Plaintiffs,

 V.

PROFESSIONAL LED LIGHTING, LTD., an
Illinois company; PRODUCT
PRODUCTIONS, INC., an Illinois company;
and PHILIP CONTURSI, an Illinois citizen,

       Defendants.
_____/

PROFESSIONAL LED LIGHTING, LTD.,

    Counterclaim Plaintiff,

vs.

AADYN TECHNOLOGY, LLC,
FRANK GALLAGHER, MARC KAYE,
and WALTER LEFLER,

    Counterclaim Defendants.
_____/

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS/COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**

Plaintiffs/Counterclaim Defendants, Aadyn Technology, LLC ("Aadyn"), Frank Gallagher, Marc Kaye, and Walter Lefler (collectively, the "Plaintiffs/Counterclaim Defendants"), pursuant to S.D. Fla. L.R. 7.1.C., hereby file their Reply Memorandum of Law in Further Support of their

1

Motion to Dismiss Counts I, II, V, VI, and VIII of Professional LED, Ltd.'s ("LED") Complaint/Counterclaim ("Complaint") under Rule 12(b)(6), and state as follows:

## INTRODUCTION

Instead of addressing the binding authority Plaintiffs/Counterclaim Defendants highlighted in their moving papers, LED used its responsive memorandum of law to misrepresent authority and improperly introduce facts that do not appear in the Complaint. Dismissal remains the most appropriate result.

### A.  LED Did Not Own PPI's Copyrights When It Filed Suit

LED's claim for copyright infringement remains unsustainable as a matter of law.  LED simply cannot pursue a claim for infringement of Product Productions, Inc's (PPI") alleged copyrights because only the "legal or beneficial owner of an exclusive right under a copyright" may "institute an action for any infringement of that particular right while he or she is the owner of it."  17 U.S.C. § 501(b); *Home Design Servs., Inc. v. Park Square Enters., Inc.,* No. 3:09-cv-130, 2005 WL 1027370, at *2 (M.D. Fla. May 2, 2005).  As previously discussed in Plaintiffs/Counterclaimants' moving papers, LED's Complaint explicitly alleges that PPI owns the videos in question, their copyrights, and all exclusive rights thereto[1].  *See* Compl., Transferred Action ECF No. [1] at ¶¶56, 58-61, 116, 121, 124-126.  The Complaint also alleges that PPI assigned to LED only its choses in action, not any ownership interest in any videos or copyrights.  *Id.* at ¶13.  This portion of the Complaint is corroborated by a document LED attached to the Complaint dated April 4, 2014, purporting to assign PPI's choses in action to LED.  *Id.* at Exhibit A.  However, PPI's bare assignment of the right to sue for copyright infringement does not satisfy the standing requirement of § 501(b).  *Lorentz v. Sunshine Health Prods., Inc.*, No. 09-61529-civ, 2010 WL 3733986, at *8 (S.D. Fla. Aug. 27, 2010).

In response to Plaintiffs/Counterclaimants' motion to dismiss LED's copyright claim for lack of standing, LED argues that PPI's written assignment of choses in action was also an oral assignment of certain copyrights.  In support of this creative contention, LED submitted a document dated July 23, 2014 purporting to be a *nunc pro tunc* agreement retroactively

---

[1]    Paragraph 116 alleges "[a]s the owner of the copyrights in the Videos, PPI enjoys the exclusive rights to, among other things, publish the Videos, reproduce the Videos, prepare derivative works based on the Videos, and distribute copies of the Videos." *See* Comp. at ¶116.

"confirming" the terms of this now oral agreement. *See* Copyright Assignment *Nunc Pro Tunc* at Transferred Action, ECF No. [18-1]. This subsequent assertion directly contradicts LED's April 4, 2014 Complaint, which expressly provides that PPI owns the copyrights in suit, and LED's April 4, 2014 chose-in-action assignment, which makes no mention of copyrights. As noted in Plaintiff/Counterclaimant's moving papers, if PPI assigned ownership of the videos and copyrights to LED on April 4, 2014, then paragraphs 58, 116, 121, and 124-126 of the Complaint were false when filed on April 4, 2014. If, on the other hand, the allegations in the Complaint are accurate, LED's more recent fabrication of an April 4, 2014 oral copyright assignment is false.[2]

Assignment of copyright ownership must be in writing and must occur before a party files suit. 17 USCS § 204, 501(b). Even if PPI had orally assigned LED its copyright before LED filed suit – it did not – the confirmatory writing simply came too late. LED cites *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529 (11th Cir. 1994) and *Imperial Residential Design, Inc. v. Palms Development Group, Inc.*, 70 F.3d 96 (11th Cir. 1995) for the proposition that oral assignments of a copyright can be memorialized with a writing after filing suit. Neither case stands for that proposition. In both, the writing which memorialized an earlier oral assignment was signed *before* suit was filed. *Rutenberg*, 29 F.3d at 1531; *see also Triple Tee Golf v. Nike, Inc.*, 511 F. Supp. 2d 676, 699-700 (N.D. Tx. 2007) (discussing timing of the *Imperial* agreement).

Although not disclosed by LED, *Imperial* actually involved two suits. *Imperial*, 70 F.3d at 97-99. The first suit was brought by plaintiff Regal under an April 1990 agreement, which assigned to it certain copyrighted plans. *Id.* The defendants asserted that the April 1990 assignment "did not carry with it any right the assignor had to sue for copyright infringements that occurred before the assignment." *Triple Tee Golf*, 511 F. Supp. 2d at 700 (internal citations omitted). In response, in May 1991, the assignor executed another assignment that transferred its causes of action for pre-litigation infringement, "which Regal claimed memorialized a pre-

---

[2]  LED has twice been put on notice of this obvious contradiction, once in Plaintiff/Counterclaimant's reply in support of their motion to dismiss the Illinois Action and then again in their moving papers before this Court. *See* Aadyn's Reply Brief., Transferred Action ECF No. [19]. Instead of addressing this issue, LED chose to triple down on its fabrication in its responsive brief before this Court.

3

litigation oral assignment." *Id.* The district court dismissed the suit, holding that Regal lacked standing to bring the suit for the alleged infringements because the May 1991 assignment was not executed until after the suit was filed." *Id.* (internal citations omitted). The Eleventh Circuit affirmed. *Id.* In the second suit, Regal and the assignor were both named plaintiffs and there was no dispute that Regal possessed a valid and complete assignment *in advance of filing suit*. *Imperial*, 70 F.3d at 98-99.

Contrary to LED's argument, later signed agreements "cannot retroactively solve the standing problem that existed at the time the action was filed…." *Triple Tee Golf*, 511 F. Supp. 2d at 699 (citing *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996) (requiring written assignment in advance of filing complaint)). Indeed, in *Gaia*, the Federal Circuit vacated a District Court's entry of judgment after trial because the plaintiff there could not "come forward with the requisite evidence necessary to establish that an assignment, in writing, of the Intellectual Property took place *before the lawsuit was filed*." *Gaia*, 93 F.3d at 780 (emphasis added); *see also Depuy, Inc. v. Zimmer Holdings, Inc.*, 384 F. Supp. 2d 1237, 1238 (N.D. Ill. 2005) (citing *Gaia* and dismissing case on eve of trial because the plaintiff did not own the patent in suit or possess a valid assignment in advance of filing suit).[3]

Like LED here, Gaia presented a *nunc pro tunc* assignment executed after the litigation began in an attempt to retroactively establish standing. 93 F.3d at 779-80. Gaia even claimed the *nunc pro tunc* assignment memorialized a pre-litigation oral assignment. *Id.* The Federal Circuit specifically rejected Gaia's *nunc pro tunc* assignment and the theory that such confirmatory writings can retroactively confer standing.[4] *Id.*

LED's July 23, 2014 *nunc pro tunc* assignment cannot retroactively cure LED's lack of standing on April 4, 2014, the date on which LED filed its Complaint. Accordingly, LED's

---

[3] Although Judge Posner dismissed the plaintiffs' claims in *Zimmer Holdings* without prejudice, the Seventh Circuit has since clarified that such dismissals must be with prejudice. *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381-82 (7th Cir. 2011) (rehearing en banc denied).

[4] LED failed to distinguish or even cite *Gaia* in their opposition brief even though Plaintiffs/Counterclaim Defendants discussed it in the Illinois Action. *See* Aadyn's Reply Brief, Transferred Action ECF No. [19] at pp. 5-6.

4

copyright claim fails as a matter of law and the Court must dismiss Count VIII of LED's Complaint with prejudice.

### B. The Court Should Award Counterclaim Defendants Their Attorneys Fees Under 17 U.S.C. § 505

As set out in Plaintiff/Counterclaimant's moving papers, LED's copyright infringement claim is patently frivolous and both factually and legally objectively unreasonable. Not only did LED lack an ownership interest in the copyrights when it filed suit, but LED seeks attorneys' fees and statutory damages, which are not available where the alleged copyright infringement commenced before the effective date of the copyright registration. 17 U.S.C. § 412. Here, LED alleges that Counterclaim Defendants' infringement began before PPI applied for copyright registration on April 3, 2014. *See* Compl., Transferred Action ECF No. [1] at ¶¶ 60, 115, and Exhibits I and H thereto; Opp. Br. at 7. Section 412 prohibits the award of attorneys' fees or statutory damages where infringement "commenced… before the effective date of its registration, unless such registration is made within three months after the first publication of the work."[5] Requesting relief not available under the Copyright Act is grounds for the award of prevailing party attorneys' fees. *Budget Cinema v. Watertower Assocs.*, 81 F.3d 719, 733 (7th Cir. 1996) cited approvingly by *Mermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *6-7 (S.D. Fla. July 15, 2011) (awarding attorneys fees where claim of copyright infringement was objectively unreasonable), *affirmed*, 492 Fed. Appx. 73 (11th Cir. 2012).

LED's assertion that its copyright claim is objectively reasonable because PPI sent Aadyn a cease and desist letter some hours before LED filed its Complaint is absurd. *See* Cease and Desist Letter at Transferred Action, ECF No. [1] at Exhibit 9. Counsel for PPI emailed the letter to Frank Gallagher, Marc Kaye, and Walter Lefler at their Aadyn business email addresses at 6:59 p.m. on Thursday, April 3, 2014. *See* Declaration of Marc Kaye at Exhibit A, Email from William Didier, Esq. attaching Copyright Infringement Notice. In *Dawes-Ordonez v. Foreman*, 418 Fed. Appx. 819, 821 (11th Cir. 2011), the Eleventh Circuit affirmed the District Court's

---

[5] Although Plaintiff/Counterclaimant cited section 412 in the Illinois Action and again in its moving papers before this Court, LED failed to cite much less address this clear statutory language in its responsive brief. Instead, LED asserted without citation that attorneys' fees and statutory damages remain available where alleged infringement continues after registration. They do not. 17 U.S.C. § 412.

5

award of attorneys' fees to deter the same type of behavior that LED exhibited here—"filing a [copyright infringement] suit without first attempting to resolve the matter outside of court." LED did not provide Aadyn with adequate time to review the letter, and investigate PPI's copyright infringement allegations, let alone take steps to "resolve the matter outside of court." *Id.* In any event, waiting several hours after sending a cease and desist notice before filing suit cannot overcome the section 412 bar against statutory damages and attorneys' fees and that portion of LED's Complaint must be dismissed with prejudice.[6]

### B. The Intracorporate Conspiracy Doctrine Bars LED's Conspiracy Claims

For both of its conspiracy claims (Counts II and VI), LED alleges that the Individual Defendants conspired with Aadyn to harm either Contursi (Count II) or PPI (Count VI).  *See* Compl., Transferred Action ECF No. [1] at ¶ 74-78, 102-106.  Elsewhere in its Complaint, LED admits that each of the Individual Defendants is an officer and a "manager/member of Defendant Aadyn." *Id.* at ¶ 4-6.

Under Florida law, "a conspiracy requires the combination of two or more persons—a meeting of two independent minds intent on one purpose." *Cedar Hills Properties Corp. v. Eastern Federal Corp.*, 575 So. 2d 673, 676 (Fla. Dist. Ct. App. 1991); *Buckner v. Lower Florida Keys Hospital Dist*., 403 So. 2d 1025 (Fla. 1981), *rev. denied*, 412 So. 2d 463 (Fla. 1982).  LED alleges that Aadyn Technology conspired with its own employees to defraud Phil Contursi; however, LED's claim must be dismissed because a corporation cannot conspire with its own employees. "Just as it is not legally possible for an individual to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir 2000) (citing

---

[6] LED's contention that Aadyn's failure to contest the facts set out in a Complaint as part of a motion to dismiss justifies LED's otherwise fatally flawed claim is befuddling.  It is hornbook law that well-pleaded allegations in a complaint are accepted as true for the purposes of a motion to dismiss.  Should portions of LED's Complaint survive, Plaintiffs/Counterclaim Defendants stand ready to vigorously dispute the many inaccurate factual allegations in the Complaint.  For example, LED/PPI/Contursi uploaded the videos to Aadyn's various social media/internet accounts in the first instance.  In addition, after receiving PPI's copyright infringement notice, and despite all Aadyn staff being out of town at an industry show, Aadyn worked through the weekend to remove all of the videos within three days.  *See* Florida Complaint, ECF No. [1] at ¶¶ 35-49; 57-60.

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981)).  LED contends that the intracorporate conspiracy doctrine does not bar their conspiracy claim against Aadyn because courts decline to apply the doctrine where (1) the conspiratorial conduct is "criminal in nature"; (2) employees act to advance their own personal interest in the conspiracy, rather than to further their corporate employer's illegal objective; or (3) employees "engage in a series of separate and distinct actions in support of [their] unlawful conduct over an extended period of time."  *See* ECF No. [37] at 9-10.

LED  is correct in noting that the intracorporate conspiracy doctrine is not without exceptions; however, the cases and exceptions cited by LED in support of this argument are inapplicable here, as they are limited to civil rights claims.  *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 768-70 (11th Cir. 2000) (holding that the intracorporate conspiracy doctrine barred Plaintiff's conspiracy claim, but noting that other circuits, *while applying the intracorporate conspiracy doctrine in § 1985 civil rights cases*, have recognized certain exceptions, including claims (1) "involving criminal charges of conspiracy"; (2) where the employee has acted outside the scope of their employment; or (3) where the employees engage in a "series of discriminatory acts as opposed to a single action"); *Grider v. City of Auburn*, 618 F.3d 1240, 1262-63 (11th Cir. 2010) (reversing the district court's grant of summary judgment and holding that the intracorporate conspiracy doctrine barred Plaintiff's § 1983 conspiracy claims against Officers Carver and Cook).

In *Grider*, the Eleventh Circuit noted that "in § 1985 cases, conspiracy is a statutory element of the 42 U.S.C. § 1985 cause of action," thus the intracorporate conspiracy doctrine, if applicable, "would bar relief in certain § 1985 cases."  *Id.* at 1262 & n.34.  Because of this, "the exceptions appear to have developed to reduce the impact of the doctrine in § 1985 cases."  *Id.*  Defendants cite no case that has applied, let alone discussed, such exceptions to the intracorporate conspiracy doctrine outside the context of civil rights actions.

The only case cited by LED in which a court actually declined to apply the intracorporate conspiracy doctrine is *McAndrew*; however, LED broadly overstates the holding in support of its argument.  The sole issue in *McAndrew* was whether "the intracorporate conspiracy doctrine applies to and bars a claim arising under Title 42 U.S.C. § 1985(2), alleging a criminal conspiracy among a corporation and its employees to prevent by force, intimidation, or threat, an

individual from testifying in court." 206 F.3d at 1035. The Eleventh Circuit held that the intracorporate conspiracy doctrine did not bar plaintiff's claim under § 1985(2) because "alleging a conspiracy to deter by force, intimidation, or threat, an individual from testifying in a federal court *necessarily alleges criminal activity* in violation of 18 U.S.C. § 1512—the criminal statute prohibiting tampering with a witness—and a criminal conspiracy in violation of 18 U.S.C. § 371." *Id.* at 1039.

Here, LED's allegations regarding alleged civil conspiracy to defraud Contursi and PPI do not amount to criminal activity. Rather, LED merely alleges that the Individual Defendants and Aadyn conspired to injure Contursi and PPI by inducing PPI to create and direct videos, without intending to pay compensation therefor. Unlike the conduct in *McAndrew*, these are purely civil allegations; thus, the criminal conduct exception to the intracorporate conspiracy doctrine is inapplicable.[7]

None of the intracorporate conspiracy doctrine exceptions cited by LED are applicable; LED's conspiracy claims remain a "legal impossibility" in Florida and, under Rule 12(b)(6), the Court must dismiss Counts II and VI of LED's Complaint with prejudice.

### C. LED Did Not Make Any Allegations of Fraud Against Aadyn

Despite LED's contention in its brief that "the individual Counterclaim Defendants, as manager-members, are the agents of Aadyn and, therefore, Aadyn acts though the individual Counterclaim Defendants," neither Count I nor Count V of LED's Complaint articulates that the individual Counterclaim Defendants made representations as agents of or on behalf of Aadyn Technology. Including Aadyn in the caption of Counts I and V, without pleading particular allegations directed at Aadyn is insufficient as a matter of law to state a claim for fraud. *Serefex Corp. v. Hickman Holdings, LP*, 695 F. Supp. 2d 1331, 1342 (M.D. Fla. 2010). Accordingly, under Rule 12(b)(6), LED's claims against Aadyn for fraud must be dismissed.

---

[7] LED's citation to *United States v. Retherford* is puzzling. The court in *Retherford* did not address the intracorporate conspiracy doctrine; there was no corporate defendant. Even if LED cited *Retherford* for the proposition that defrauding the IRS is a crime, the citation remains odd. LED's Complaint does not include any tax related allegations.

### D. LED's Fraud Allegations Against the Individual Defendants Were Not Pled With Particularity

All parties agree that under Rule 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake," including

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Infante v. Bank of America Corp.*, 469 Fed. Appx. 918, 919-20 (11th Cir. 2012).

These specificity requirements serve "an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir.), *reh'g denied*, 116 F.3d 1495 (11th Cir. 1997)).  To be sure, "generalized allegations lumping multiple defendants together are insufficient" under Rule 9(b).  *West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81, 87 (11th Cir. 2008); *Serefex*, 695 F. Supp. 2d at 1342.  Despite claiming that each of the individual Counterclaim Defendants made numerous representations to Contursi and PPI, LED fails to allege in its Complaint what was actually said, by whom, or when, where, and how the alleged misrepresentations were made.  *See* Compl., Transferred Action ECF No. [1], at ¶¶62-73; 91-101.

According to LED, this Court should relax the pleading requirements of Rule 9(b) because the alleged fraud "occurred over a period of time."  *See* ECF No. [37] at 13.  Courts occasionally do relax the requirements of Rule 9(b) in complex cases where numerous fraudulent acts occur over a period of time, but "even in the most complex . . . cases, those same courts bless[] the allegations at issue only because they include[] at least the identity of the individual who made the representation." *In re Olympia Brewing Co. Sec. Litigation*, 674 F. Supp. 597, 620 (N.D. Ill. 1987) (dismissing fraud claims and declining to relax the requirements of Rule 9(b) where Plaintiff's overly general allegations lumped all of the counterdefendants together); *see also Advisor's Capital Invs., Inc. v. Cumberland Cas. & Sur. Co.*, No. 8:05-cv-404, 2007

U.S. Dist. LEXIS 5865, at *15-16 (M.D. Fla. Jan. 26, 2007) (dismissing fraud claims because complaint failed to "reasonably notify each Defendant of the specific nature of his or her alleged participation in the fraud, as Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'"); *Behrman v. Allstate Life Ins. Co.*, No. 04-60926-civ, 2005 U.S. Dist. LEXIS 7262, at *9-10 (S.D. Fla. Mar. 23, 2005) (dismissing Plaintiff's fraud claims where Plaintiff "simply lumped together all of the Defendants," and failed to allege "how any particular [Defendant] defrauded him through any identifiable misstatement or omission made directly or indirectly to him").  LED's fraud claims do not contain any of the specificity required by Rule 9 and, as a result, the Court must dismiss Counts I and V of LED's Complaint.

**CONCLUSION**

For the foregoing reasons, Plaintiffs/Counterclaim Defendants respectfully request that the Court dismiss Counterclaim Plaintiff's claims for fraud (Counts I and V), civil conspiracy (Counts II and VI), and copyright infringement (Count VIII) for failure to state a claim upon which relief can be granted and award them their attorneys' fees under 17 U.S.C. § 505. In the alternative, Plaintiffs/Counterclaim Defendants respectfully request that the Court dismiss with prejudice LED's request for statutory damages and attorneys' fees and award Plaintiffs/Counterclaim Defendants their attorneys' fees under 17 U.S.C. § 505.

[SIGNATURE BLOCK AND CERTIFICATE OF SERVICE ON FOLLOWING PAGE]

Dated: February 2, 2015  Respectfully submitted,
       Boca Raton, FL

*s/ Robin I. Frank*
ROBIN I. FRANK, ESQ.
Florida Bar No. 0649619
E-Mail: rifrank@sbwlawfirm.com
SHAPIRO, BLASI & WASSERMAN, P.A.
7777 Glades Road, Suite 400
Boca Raton, FL  33434
Phone: (561) 477-7800/Fax: (561) 477-7722
Counsel for Plaintiffs/Counterclaim Defendants

and

*s/ Darth M. Newman*
DARTH M. NEWMAN, ESQ.
New Jersey Bar No. 032282008
E-Mail: dnewman@archerlaw.com
ARCHER & GREINER, P.C.
One Centennial Square
Haddonfield, NJ 08033
Telephone:     (856) 673-3905
Facsimile:     (856) 673-7035
Counsel for Plaintiffs/Counterclaim Defendants
(*Pro Hac Vice*)

## **CERTIFICATE OF SERVICE**

     I hereby certify that on February 2, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Robin I. Frank*
ROBIN I. FRANK, ESQ.

**SERVICE LIST**

*Professional LED Lighting, Inc. v. Aadyn Technology, LLC, et al.*
*AAdyn Technology, LLC, et al. v. Professional LED Lighting, Ltd., et al.*
Case No. 0:14-cv-61376-BB
United States District Court, Southern District of Florida

| | |
|---|---|
| Robin I. Frank, Esq.<br>E-Mail: rifrank@sbwlawfirm.com<br>Aram C. Bloom, Esq.<br>E-Mail: acbloom@sbwlawfirm.com<br>Adam S. Chotiner, Esq.<br>E-Mail: aschotiner@sbwlawfirm.com<br>Shapiro, Blasi & Wasserman, P.A.<br>7777 Glades Road, Suite 400<br>Boca Raton, FL  33434<br>Telephone:  (561) 477-7800<br>Facsimile:    (561) 477-7722<br>Counsel for Plaintiffs/Counterclaim Defendants<br>*Via CM/ECF* | Darth M. Newman, Esq.<br>E-Mail: dnewman@archerlaw.com<br>Archer & Greiner, P.C.<br>One Centennial Square<br>Haddonfield, NJ 08033<br>Telephone:     (856) 673-3905<br>Facsimile:      (856) 673-7035<br>Counsel for Plaintiffs/Counterclaim Defendants (*Pro Hac Vice*)<br>*Via CM/ECF* |
| Eric Lee, Esq.<br>E-Mail: lee@leeamlaw.com<br>Lee & Amtzis, P.L.<br>5550 Glades Rd., Suite 401<br>Boca Raton, FL 33431<br>Tel:    (561) 981-9988<br>Counsel for Defendants/Counterclaim Plaintiff<br>*Via CM/ECF* | William J. Delaney, Esq.<br>E-Mail: bill@delaney-law.com<br>Delaney Law<br>444 N. Wabash Ave., 3rd Floor<br>Chicago, IL 60611<br>Tel:   (312) 276-0263<br>Counsel for Defendants/Counterclaim Plaintiff (*Pro Hac Vice*)<br>*Via CM/ECF* |