**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-CIV-61376-BLOOM/Valle**

PROFESSIONAL LED LIGHTING, LTD.,

      Plaintiff,

v.

AADYN TECHNOLOGY, LLC,
FRANK GALLAGHER,
MARC KAYE, and WALTER LEFLER,

      Defendants.
_____/

AADYN TECHNOLOGY, LLC, a Delaware
Limited Liability Company; FRANK
GALLAGHER, a New Jersey citizen; MARC
KAYE, a Florida citizen; and WALTER
LEFLER, a New Jersey citizen,

      Plaintiffs,

v.

PROFESSIONAL LED LIGHTING, LTD., an
Illinois company; PRODUCT
PRODUCTIONS, INC., an Illinois company;
and PHILIP CONTURSI, an Illinois citizen,

      Defendants.
_____/

## ORDER ON MOTION FOR DEFAULT JUDGMENT AND MOTION TO DISMISS

    **THIS CAUSE** came before the Court on the Motion for Default Final Judgment filed by

AAdyn Technology, LLC ("AAdyn"), Frank Gallagher, Marc Kaye and Walter Lefler (together,

the "AAdyn Parties"), ECF No. [23] (the "Motion for Default Judgment") and the Response,

ECF No. [38], by Professional LED Lighting, Ltd. ("LED"), Product Productions, Inc. ("PPI")

and Philip Contursi (together, the Contursi Parties"); and on the Motion to Dismiss, ECF No. [32] (the "Motion to Dismiss"), filed by the AAdyn Parties with respect to Complaint filed by LED, Case No. 14-cv-62786 (the "Illinois Action") ECF No. [1] (the "LED Complaint").  The Court has carefully reviewed the Motions, all supporting and opposing submissions, the record in this case and applicable law, and for the reasons set forth below, in part grants and in part denies the relief requested by the parties.

## I.      PROCEDURAL BACKGROUND

This Court received this action on June 13, 2014, when the AAdyn Parties filed their Complaint against the Contursi Parties, ECF No. [1] (the "AAdyn Complaint"), alleging breach of contract and requesting declaratory relief.  Some two months prior, on April 4, 2014, the Contursi Parties filed their Complaint in the United States District Court for the Northern District of Illinois, asserting claims for copyrights infringement, fraud, unjust enrichment, civil conspiracy and breach of contract.  While the Illinois Action proceeded apace – with the AAdyn Parties filing a motion to dismiss or transfer venue the same day as filing the instant action before this Court – the Contursi Parties failed to respond or appear before this Court.

On September 29, 2014, the Court directed the AAdyn Parties to perfect service on each of the Contursi Parties by or before October 13, 2014. ECF No. [6].  In compliance with that Order, *see* ECF No. [11], the AAdyn Parties filed proof of executed service on LED, PPI and Contursi.  ECF Nos. [7], [9], [10] (Returns of Service).  According to the affidavits of service, service on PPI and Contursi was executed on September 19, 2014, providing a deadline for those parties to respond to the AAdyn Complaint of October 10, 2014.  According to the affidavits of service, service on LED was executed on September 23, 2014, providing a deadline for LED to respond to the AAdyn Complaint of October 14, 2014.  None of the Contursi Parties appeared or

responded.  On October 16, 2014, and pursuant to the Court's Order requiring the Contursi Parties to respond and directing the AAdyn Parties to seek default should they not, ECF No. [14], the AAdyn Parties mailed a copy of said Order to each of the Contursi Parties at the addresses reflected on the Returns of Service, and, on October 27, 2014, filed a Motion for Entry of Default as to each of the Contursi Parties.  ECF No. [20].  The Clerk entered default the following day.  ECF No. [21].  The Court subsequently issued an Order on default procedures. ECF No. [22].  In compliance with that Order, on November 10, 2014, the AAdyn Parties filed the Motion for Default Judgment.

On December 10, 2014, the Court issued an order in part granting and in part denying the Motion for Default Judgment.  ECF No. [26] (the "Default Judgment Order").  Therein, the Court determined that, given the Contursi Parties' default and the clear evidence presented by the AAdyn Parties, the AAdyn Parties had stated and supported their claim for breach of contract. However, the Court *sua sponte* assessed its exercise of jurisdiction with respect to the other claims asserted in the AAdyn Complaint in light of the first filed doctrine and the Illinois Action. The Court declined to rule on the AAdyn Parties' two claims for declaratory relief – which addressed liability owing from the AAdyn Parties to the Contursi Parties on the basis of certain purported agreements and certain copyrights purportedly owned by either PPI or LED (discussed further below).  The Court subsequently issued a separate order of final judgment by default against each of the Contursi Parties, jointly and severally, with respect to the breach of contract claim, and a second order clarifying that the judgment was immediately executable.  ECF Nos. [28], [31].

Concurrent with this Court's consideration of the Motion for Default Judgment, the District Court in Illinois resolved the AAdyn Parties' motion to dismiss the Illinois Action, and

CASE NO. 14-CIV-61376-BLOOM/Valle

on November 11, 2014, transferred the action to this District (on the basis of a forum selection clause in one of the parties' contracts).  Illinois Action ECF Nos. [24], [25].  The District Court in Illinois denied without prejudice the remainder of the AAdyn Parties' motion to dismiss.

On December 16, 2014, this Court entered an order consolidating the Illinois Action and the instant action.  ECF No. [27].  The Court further directed the AAdyn Parties to respond or submit a motion pursuant to Fed. R. Civ. P. 12 with respect to the LED Complaint, and the Contursi Parties to show cause why the declaratory relief requested in the Motion for Default Judgment should not be granted by default, within specified deadlines.  The parties timely complied.  Accordingly, the AAdyn Parties' Motion to Dismiss, and well as their Motion for Default Judgment with the benefit of the Contursi Parties' Response, are before the Court and ripe for adjudication.

## II.    DEFAULT JUDGMENT

In their Response to the Motion for Default Judgment, the Contursi Parties challenge the ability of this Court to grant the requested declaratory relief by default on the basis of the Court's subject matter jurisdiction, personal jurisdiction over the PPI and Contursi, and the Court's exercise of its jurisdiction in light of the first filed doctrine.  On those same bases, the Contursi Parties request that any prior orders of default be vacated.  As explained below, subject matter and personal jurisdiction before this Court is (and was) proper.  However, the first filed doctrine guides the Court to withhold adjudication of the AAdyn Parties' declaratory claims until they can be decided on the merits.

### A.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Dudley v. Eli Lilly & Co.*, --- F.3d ---, 2014 WL

7360016, at *2 (11th Cir. Dec. 29, 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  In their Complaint, the AAdyn Parties asserted jurisdiction on the basis of complete diversity of citizenship, pursuant to 28 U.S.C. § 1332.  *See* AAdyn Compl. ¶ 6.

"Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998); *see also King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007) ("Where, as here, the plaintiff asserts diversity jurisdiction, he has the burden to prove that there is diversity.").  Unlike a corporation, but "like a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).  Therefore, "[t]o sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company and all the partners of the limited partnership." *Id.*; *see also Venture Invs. Props., LLC v. Scottsdale Ins. Co.*, 2015 WL 269011, at *1 (M.D. Fla. Jan. 21, 2015) ("To establish diversity jurisdiction, the Court needs information regarding the citizenship of all the members of a limited liability company, not just the managing members.").

While the AAdyn Parties establish diversity of citizenship as between the managing members of AAdyn, which is a limited liability company, and each of the Contursi Parties, the AAdyn Complaint itself alleges that a non-party, Salina Vest, holds a five percent ownership interest in AAdyn.  Vest is a citizen of Illinois, as are each of the Contursi Parties.  *See* ECF No. [38-1].  Accordingly, complete diversity is lacking.

The Court briefly pauses to highlight an irony.  While the Contursi Parties object to this Court's jurisdiction on the basis of incomplete diversity, *they themselves* alleged in the LED Complaint that the parties were completely diverse.  *See* LED Compl. ¶ 7 (asserting diversity

CASE NO. 14-CIV-61376-BLOOM/Valle

jurisdiction pursuant to 28 U.S.C. § 1332, as between LED and AAdyn).  Ultimately, the issue is irrelevant; the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Congress has authorized the federal district courts to exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The federal question at issue "must appear on the face of the plaintiff's well-pleaded complaint."  *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1251 (11th Cir. 2011).  "Federal question jurisdiction 'exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law.'"  *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008) (quoting *Household Bank v. JFS Group*, 320 F.3d 1249, 1251 (11th Cir. 2003)).  Critically for our purposes, "where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute."  *Lykins v. Pointer, Inc.*, 725 F.2d 645, 646 (11th Cir. 1984) (quoting *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980)).

Here, the AAdyn Complaint includes numerous allegations regarding the alleged copyrights in suit.  *See* AAdyn Compl. ¶¶ 61, 64, 121, 127, 128.  Indeed, the entire third count of that complaint is devoted to PPI's alleged copyrights and LED's purported ownership interests therein, and requests a declaratory judgment that LED does not possess an interest in any PPI copyright, that LED cannot pursue a claim for copyright infringement against the AAdyn Parties, and that the AAdyn Parties have no liability to PPI for copyright infringement.  This invokes the Court's subject matter jurisdiction under the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 101, *et seq.*, pursuant 28 U.S.C § 1331.  Of course, this is the same jurisdictional basis primarily asserted by the Contursi Parties in their contrapositive claim for copyright infringement

against the AAdyn Parties.  With federal-question jurisdiction over the copyright declaratory claim established, the Court has pendent jurisdiction over the other claims asserted in the AAdyn Complaint, pursuant to 28 U.S.C. § 1376(a).

### B.   Personal Jurisdiction

The Contursi Parties argue that service on PPI and Contursi was invalid, and that, therefore, the Court lacked personal jurisdiction over those parties when they were defaulted and the Court entered its Default Judgment Order.  "If a party is not validly served with process, proceedings against that party are void." *Kelly v. Florida*, 233 F.R.D. 632, 634 (S.D. Fla. 2005) (citing *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)); *see also In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void.").

Pursuant to Fed. R. Civ. P. 4(e), service upon an individual or corporation may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected."  FED. R. CIV. P. 4(e).  The AAdyn Parties filed affidavits of service stating that service was perfected on both PPI and Contursi on September 19, 2014 in Chicago, Illinois. ECF Nos. [9], [10].  Because, as discussed below, service on PPI and Contursi was proper, this Court has had personal jurisdiction over those parties since that date.

### 1.   Service On Contursi Was Proper

Under Illinois law, "service of summons upon an individual defendant shall be made (1) by leaving a copy of the summons with the defendant personally."  735 Ill. Stat. § 5/2-203.  "An affidavit of service should be considered *prima facie* evidence that the process was properly served [and] should not be set aside unless the return has been impeached by clear and

7

CASE NO. 14-CIV-61376-BLOOM/Valle

satisfactory evidence." *In re Jafree*, 444 N.E.2d 143, 146 (Ill. 1982); *see also Winning Moves, Inc. v. Hi! Baby, Inc.*, 605 N.E.2d 1026, 1029 (Ill. App. 3d Dist. 1992) ("In the case of personal service, the return of summons is *prima facie* proof of proper service which can only be overcome by clear and convincing evidence . . . ."); *Hollander v. Wolf*, 2009 WL 3336012, at *3 (S.D. Fla. Oct. 14, 2009) ("A signed return of service is prima facie evidence of proper service. If a plaintiff makes a prima facie showing of proper service, the burden shifts back to the defendant to bring strong and convincing evidence of insufficient process.").  The requirement that a defendant impeach a return of service by clear and convincing evidence applies equally whether the return is filed by a deputy sheriff or by a process server.  *Freund Equip., Inc. v. Fox*, 166, 703 N.E.2d 542, 544-45 (Ill. App. 2d Dist. 1998).  "Courts are required to indulge in every reasonable presumption in favor of the return, and the uncorroborated testimony of the party upon whom service is made is not enough to set aside this evidence."  *MB Fin. Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077, ¶ 24, 990 N.E.2d 764, 772 (Ill. App. 1st Dis. 2013); *see also Winning Moves*, 605 N.E.2d at 1029 ("[T]he court is required to indulge in every reasonable presumption in favor of the return."); *Pineschi v. Rock River Water Reclamation Dist.*, 805 N.E.2d 1241, 1246 (Ill. App. 3d Dist. 2004) ("A person's mere testimony that she was not served is insufficient to overcome the presumption of service."); *Paul v. Ware*, 630 N.E.2d 955, 958 (Ill. App. 1st Dist. 1994) ("An uncorroborated defendant's affidavit merely stating that he had not been personally served with summons is insufficient to overcome the presumption favoring the affidavit of service.").

Here, the only evidence the Contursi Parties present to stand against the affidavit of service is Contursi's own statement that he was never served with process in this matter.  *See* ECF No. [39-1] (Contursi Aff.).  Contursi's affidavit claiming that he was not personally served

is insufficient to overcome the *prima facie* evidence that the process was properly served.[1] *See*, *e.g.*, *Paul v. Ware*, 630 N.E.2d at 958.  Thus, service of process on Contursi was proper.

### 2.    Service On PPI Was Proper

Illinois law provides that a private corporation "may be served by (1) leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law." 735 Ill. Stat. § 5/2-204. PPI was served via Contursi.  *See* ECF No. [9].  The Contursi Parties contend that Contursi was neither the registered agent nor an officer of PPI and does not have actual authority to accept service on behalf of PPI.  *See* ECF No. [39-2] (Vest Aff.).  Unlike with an individual defendant, "when a corporation is the defendant, the . . . return is not conclusive as to the fact of agency." *Iosello v. Lexington Law Firm*, 2003 WL 21920237, at *3 (N.D. Ill. Aug. 12, 2003) (citing *Island Terrace Apartments v. Keystone Serv. Co., Division of Cole Coin Operated Laundry Equip., Inc.*, 341 N.E.2d 41, 43-4 (Ill. App. 1st Dist. 1975)).  Where the agency of the person named on the return is disputed, some Illinois appellate courts have held that the burden is on the plaintiff to verify valid service, while other courts have held that the defendant has the burden of proving that the person served was not a proper person to receive service.  *See Dei v. Tumara Food Mart, Inc.*, 863, 941 N.E.2d 920, 925 (Ill. App. 1st Dist. 2010) (noting split in authority).  *Compare Slates v. International House of Pancakes, Inc.*, 413 N.E.2d 457 (Ill. App. 4th Dist. 1980) *and Harris v. Am. Legion John T. Shelton Post No. 838*, 297 N.E.2d 795 (Ill. App. 1st Dist. 1973) *with Island Terrace*, 341 N.E.2d 41; *Millard v. Castle Baking Co.*, 161 N.E.2d 483 (Ill. App. 1st

---

[1] As the affidavits of service illustrate, Contursi attempted to evade service of process by lying about his identity and refusing to accept the papers.  The process server used a photograph of Contursi to identify him before slipping the papers under his door, which also had a sign reading "Product Productions, Inc."  *See* ECF Nos. [9], [10], [46-1] (Lewis Aff.).  Given those conditions, "no requirement exists that the process server physically place the papers in defendant's hand."  *Freund Equip.*, 703 N.E.2d at 545.

Dist. 1959) *and Iosello*, 2003 WL 21920237, at *3.   Ultimately, whether an employee "is an

appropriate agent for service of summons is a factual question."  *Bober v. Kovitz, Shifrin, Nesbit*,

2005 WL 2271861, at *4 (N.D. Ill. Sept. 14, 2005) (citing Citicorp Sav. of Ill. v. Rucker, 692

N.E.2d 1319, 1325 (Ill. App. 1st Dist. 1998)).   "In making this determination, the Court takes

into account all the circumstances surrounding the service and the relationship of the person

served to the party named in the complaint."  *Id.*, 2005 WL 2271861, at *5 (surveying Illinois

law).  Central to this analysis is whether "the recipient of the process was . . . a person who could

understand the purport of the service of process and her duties in regard thereto."  *Id.*

There can be no doubt – based on the relationship between Contursi and PPI – that PPI is

amenable to service through Contursi.   Contursi signed a non-exclusive sales representative

agreement with AAdyn as the founder of PPI and a March 27, 2012 letter agreement with

AAdyn on behalf of PPI.  *See* ECF Nos. [1-5], [1-12].  After signing these agreements, Contursi

continued to act as an agent and a public face of PPI.  He addressed customer concerns and

orders for PPI.  *See* ECF No. [46-2 (Kaye Decl.) Exh. A (Email chain between Contursi and D.

Griffiths); Exh. B (email and purchase order); Exh. C (email chain with Contursi, Sturdy Co.,

Midwest Grip and Lighting Co.).   Contursi has also directed PPI's employees, including PPI's

corporate secretary Alberto Amador and its General Manager/Executive Producer Bennett

Grossman.  *See* Kaye Decl. Exh. D (emails sent by Mr. Amador using Contursi's PPI email

address); Exh. E (email chain between Mr. Grossman and Southeast Staging, Inc.).   Contursi

executed purchase orders for PPI.  *See* Kaye Decl. Exh. F (purchase order).  Finally, Contursi has

held himself out as the union contact person for PPI with the International Brotherhood of

Electrical Workers local 1220.  *See* ECF No. [46-3] (Newman Cert.) Exh. 2 (list of IBEW local

1220 contractors, also available at http://www.ibew1220.org/contractors.pdf).

Based on the foregoing, the Court concludes that Contursi was an appropriate agent for service of process on PPI when that service was effectuated. *See also Bober*, 2005 WL 2271861 at *5 (an employee not expressly authorized to accept service of process (or, in fact, instructed not to accept service of process) may still qualify as a corporate "agent" within the meaning of 735 Ill. Stat. § 5/2-204); *Schmitt v. Schmitt*, 2002 WL 109359, at *3 (N.D. Ill. Jan. 28, 2002) (service on secretary appropriate "upon the reasonable belief that a secretary would pass these legal documents on to her boss").

### 3.    The Court Has Personal Jurisdiction Over The Contursi Parties

The AAdyn Parties properly served Contursi and PPI, bringing both parties within the jurisdiction of this Court. The Court also notes that, the issue of valid service aside, Contursi and PPI both had actual knowledge of the AAdyn Complaint and the instant action. The Contursi Parties do not contest that LED was properly served. The Contursi Parties' common attorney was served with the AAdyn Complaint on behalf of LED, and was also requested to accept service on behalf of Contursi and PPI. *See* Newman Decl. Exh. 1.

Because the Court had personal jurisdiction over each of the Contursi Parties, the Clerk's entry of default and the Court's Order on Default Judgment were both valid.

### C.    First Filed Doctrine

In light of the first filed doctrine, the transfer of the Illinois Action and its consolidation into the instant action permits the Court to consider the request for declaratory relief in the AAdyn Complaint on the merits, rather than by default.

As this Court has previously explained, the first-filed rule provides that, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under

CASE NO. 14-CIV-61376-BLOOM/Valle

the first-filed rule." *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) ("In [the] absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."). "The first-filed rule is premised on judicial economy, comity amongst the district courts, and the desire to avoid potentially conflicting rulings." *Nebula Glass Int'l, Inc. v. Budnick Converting, Inc.*, 2010 WL 473330, at *1 (S.D. Fla. Feb. 5, 2010). Where the first-filed rule applies, the "second-filed" court will generally decline to exercise jurisdiction.

Here, the Contursi Parties commenced the Illinois Action on April 4, 2014, shortly over two months prior to the AAdyn Parties' filing of their Complaint before this Court. The AAdyn Parties, correctly as it turned out, maintained that the LED Complaint was improperly filed in Illinois. Nevertheless, commencing suit in this District rather than countersuing in the Illinois Action or simply waiting for the District Court in Illinois to resolve their request to transfer venue was inexpedient. As the Court stated in its Default Judgment Order, the first-filed doctrine strongly encourages deference in favor of the first-filed suit precisely to prevent situations like this one – with overlapping and duplicative claims and actions – which could result not only in inefficiencies but, more importantly, in conflicting rulings. In point of fact, the AAdyn Parties, in asking the Court to grant them declaratory relief on the copyright issues by default while the Contursi Parties' transferred-in claim for copyright infringement must be considered on the merits, invites just the type of dueling cases the first-filed rule was developed to avoid. This being a case of both sides behaving badly, the fact that the Contursi Parties sued first is no excuse for their failure to appear or defend in this action. They were properly served and afforded ample opportunity to respond. Had the Contursi Parties wished to raise the first-filed doctrine as grounds for staying or dismissing this action, they could have made a timely and

appropriate motion seeking that relief.  They declined to do so.  In the end, gamesmanship by both sides has resulted only in increased costs and delay.

The import of the first-filed doctrine in this matter is that the Clerk's entry of default will be considered ineffective against the Contursi Parties with respect to Counts II and III of the AAdyn Complaint, and with respect to the entirety of the LED Complaint.  The Court will consider those claims with the benefit of factual inquiry and on their merits.  However, the Court's Order on Default Judgment and issuance of Final Default Judgment with respect to Count I of the AAdyn Complaint will remain undisturbed.

### III.    MOTION TO DISMISS

Moving to the Motion to Dismiss, the AAdyn Parties request that the Court dismiss Counts I, II, V, VI and VIII of the LED Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

### A.    Factual Allegations in the LED Complaint

As alleged in the LED Complaint, Contursi is a lighting professional with substantial lighting knowledge and experience.  LED Compl. ¶ 14.  AAdyn's primary business activity is designing, engineering, manufacturing and marketing lights and lighting equipment.  *Id.* ¶ 3. AAdyn sells and distributes lights and lighting equipment throughout the United States and in other countries.  *Id.*  Gallagher, Kaye and Lefler are the managing members of AAdyn.  *Id.* ¶¶ 4- 6.  In or about April 2011, Contursi attended the National Association of Broadcasters in Las Vegas, Nevada where he met Kaye and Lefler.  *Id.* ¶ 15.  At that time, the Contursi Parties allege, AAdyn lacked substantial knowledge and experience regarding professional lights and lighting equipment, and sought to benefit from Contursi's lighting knowledge and experience. *Id.* ¶ 16.

CASE NO. 14-CIV-61376-BLOOM/Valle

Beginning in May 2011, Contursi provided business consultation, advice and assistance regarding professional lights and lighting equipment and marketing and sale of professional lights and lighting equipment.  *Id*. ¶ 17.  This relationship continued through mid to late 2013. *Id*. ¶¶ 17-42.  During the course of that relationship, Contursi was consulted on the development of lighting products and equipment; travelled to tradeshows and to potential clients to promote AAdyn products and provide technical consultation, advice and assistance; developed marketing equipment to promote AAdyn products; and provided technical support for AAdyn clients.  *Id*.

On or about May 2, 2011, AAdyn and PPI entered into a non-exclusive agreement whereby AAdyn sought the services of PPI as a sales representative for AAdyn branded products.  *Id*. ¶ 46; *see* Illinois Action ECF No. [1-3] (Sales Representative Agreement). Contursi, as the founder of PPI, executed the Sales Representative Agreement on behalf of PPI. Sales Representative Agreement at p. 3.  Under the Sales Representative Agreement, PPI was to promote and solicit sales of AAdyn products in Illinois, Indiana, Wisconsin, Michigan Missouri and Minnesota.  *Id*. ¶¶ 1-3.  The agreement further requires that AAdyn pay PPI a ten-percent commission for PPI's monthly net sales of AAdyn branded products.  *Id*. ¶ 9.

On or about March 27, 2012, AAdyn and PPI entered an additional agreement which provides PPI the opportunity to market and sell AAdyn branded products to certain accounts outside its sales market territory identified in the Sales Representative Agreement in exchange for AAdyn's payment of five-percent commissions to PPI for such sales.  LED Compl. ¶ 47; *see* Illinois Action ECF No. [1-4] (Letter Agreement).  The Letter Agreement also identified that a non-exclusive dealer agreement would be made for LED.  Letter Agreement at p. 1.  Contursi signed the Letter Agreement.  *Id*. at p. 3.

On or about March 28, 2011, Aadyn and LED entered into a non-exclusive dealership agreement, which provides that LED will purchase, inventory, promote and sell AAdyn branded products, and that LED will maintain adequate inventories of AAdyn branded products and will promote the sale thereof in a primary marketing area consisting of Illinois, Indiana, Michigan, Missouri, Minnesota, and Wisconsin.  LED Compl. ¶ 48; *see* Illinois Action ECF No. [1-5] (Dealership Agreement).  The Dealership Agreement requires LED to pay AAdyn for all products LED ordered as well as shipping charges incurred.  Dealership Agreement ¶¶ 2-4.

The Contursi Parties allege that PPI assigned the Sales Representative Agreement and Letter Agreement to LED, and that LED assigned the Dealership Agreement to PPI.  LED Compl. ¶ 49.  On or about November 20, 2013, AAdyn sent written notice terminating the Sales Representative Agreement.  *Id*. ¶ 50; *see* Illinois Action ECF No. [1-6] (Termination Letter).

The Contursi Parties allege that AAdyn has failed to make full payment to LED for commissions earned in connection with LED's sale of AAdyn branded products, despite LED's demand to AAdyn for payment.  LED Compl. ¶ 53.  They allege that there remains a balance due and owing LED from AAdyn in excess of $50,000.  *Id*.  On or about March 5, 2014, as alleged in the LED Complaint, Kaye contacted LED and stated that AAdyn had determined that it owed LED an amount in excess of $30,000, but that AAdyn would pay LED only approximately $20,000 in commissions for sale of AAdyn branded products.  *Id*. ¶ 54.

The Contursi Parties further allege that in or about July 2011, AAdyn communicated to PPI that it was interested in having PPI create, direct and produce audiovisual works for use in promoting AAdyn's lights and lighting equipment and providing information and training regarding use of thereof to AAdyn's potential and current customers.  *Id*. ¶ 55.  Between July 2011 and April 2013, PPI spent significant time, labor and expense creating, directing and

producing videos (the "Videos"), which allegedly consist wholly of original material and allegedly were and are copyrightable subject matter under the copyright laws of the United States. *Id*. ¶ 56. The Videos were completed at various intervals from July 2011 through April 2013. *Id*. The LED Complaint states that upon completion, the Videos were used by AAdyn for promotional, informative and training purposes; that Aadyn continues to use the Videos for promotional, informative and training purposes; and that Aadyn has commercially benefitted and continues to benefit from its use of the Videos. *Id*. ¶¶ 56-57. As stated in the LED Complaint, PPI holds copyright interests in the Videos. *Id*. ¶¶ 57-61, 113-126. On April 3, 2014, PPI applied to the United States Copyright Office to obtain Certificates of Copyright Registration in connection with the Videos. *Id*. ¶ 59; *see* Illinois Action ECF No. [1-8] (Application). That same day, PPI sent AAdyn a cease-and-desist letter notifying Aadyn that it is using the Videos for commercial benefit without license or permission from PPI, and demanding Aadyn to cease using and remove the Videos from its web properties. LED Compl. ¶ 60; *see* Illinois Action ECF No. [1-9] (Cease-and-Desist Letter). LED filed its Complaint the next day, on April 4, 2014. The Contursi Parties allege that AAdyn has not compensated PPI for creating, directing and producing the Videos, despite PPI's demand for payment. *Id*. ¶ 58.

The LED Complaint asserts eight causes of action against the AAdyn Parties: fraud against all AAdyn Parties with respect to Contursi's business consulting, and the sale and marketing of AAdyn products (Count I); civil conspiracy against all AAdyn Parties with respect to Contursi's business consulting, and the sale and marketing of AAdyn products (Count II); unjust enrichment against AAdyn only with respect to Contursi's business consulting, and the sale and marketing of AAdyn products (Count III); breach of contract against AAdyn only with respect to the Sales Representative Agreement (Count IV); fraud against all AAdyn Parties with

respect to the production and use of the Videos (Count V); civil conspiracy against all AAdyn Parties with respect to the production and use of the Videos (Count VI); unjust enrichment against AAdyn only with respect to the production and use of the Videos (Count VII); and copyright infringement by all AAdyn Parties in violation of the Copyright Act (Count VIII). LED is the only named plaintiff in the LED Complaint.

### B.   Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").   Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee*

CASE NO. 14-CIV-61376-BLOOM/Valle

*Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678.   A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.   *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).   While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."   *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.   "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"   *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

    **C.    Discussion**

    The Motion to Dismiss pertains only to the fraud, civil conspiracy and copyright infringement claims (Counts I, II, V, VI and VIII of the LED Complaint).

    **1.    LED Cannot Sustain Its Copyright Claims (Count VIII)**

    In Count VIII of the LED Complaint, LED asserts a claim breach of several copyrights it alleges are owned by PPI.   LED's claims for copyright infringement are unsustainable as a

matter of law.

Under the Copyright Act, only the "legal or beneficial owner of an exclusive right under a copyright" may "institute an action for any infringement of that particular right while he or she is the owner of it."  17 U.S.C. § 501(b); *see also Home Design Servs., Inc. v. Park Square Enters., Inc.*, 2005 WL 1027370, *2 (M.D. Fla. May 2, 2005).  Accordingly, "only the legal or beneficial owner of an 'exclusive right' has standing to bring a copyright infringement action" under the Copyright Act.  *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290-91 (11th Cir. 2011).

A transfer of copyright ownership "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).  However, "the note or memorandum required by section 204 need not be contemporaneous with the transfer of copyright ownership."  *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 2008 WL 4938420, at *1 (S.D. Fla. Nov.18, 2008).  Rather, "section 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer."  *Imperial Residential Design, Inc. v. Palms Development Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (emphasis added); *see also Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532 (11th Cir. 1994) ("Many courts have held that the requirements of 17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer."); *Utopia*, 2008 WL 4938420 at *1 ("[A] memorandum executed later can serve to validate a previous oral transfer of copyright ownership.").

However, the assignment of a right to sue does not alone convey "exclusive" rights for purposes of standing under the Copyright Act.  *See Silvers v. Sony Pictures Entm't, Inc.*, 402

F.3d 881, 884, 890 (9th Cir. 2005) ("The right to sue for an accrued claim for infringement is not an exclusive right under [17 U.S.C.] § 106" such that "[t]he bare assignment of an accrued cause of action" does not satisfy the standing requirement of section 501(b)). That is, section 501(b) of the Copyright Act does not permit the copyright owner to retain the copyright, but convey the mere right to sue. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("[T]he Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf."). Put another way, a mere right to sue is not an exclusive right under a copyright, and is insufficient to bring an infringement action. *See Righthaven LLC v. Democratic Underground, LLC*, 791 F. Supp. 2d 968, 976 (D. Nev. 2011) (citing *Silvers*, 402 F.3d at 890); *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 280-81 (S.D.N.Y. 2014) ("Where . . . an agreement transfers nothing more than a bare right to sue, it cannot be the basis for standing under the Copyright Act.") (quotation omitted). On the other hand, transfer of the right to sue must itself be sufficiently explicit. *See Infodek, Inc. v. Meredith-Webb Printing Co.*, 830 F. Supp. 614, 620 (N.D. Ga. 1993) ("Explicit language of a transfer of a right to past infringements is necessary because of the threat of multiple litigation for the same alleged infringement."); *Identity Arts v. Best Buy Enter. Servs., Inc.*, 2006 WL 328423, at *3 (N.D. Cal. Feb. 10, 2006) (assignment ineffective where "purportedly exclusive assignments nowhere state[d] the nature of what is being assigned, nor d[id] they contain any description of any of the three works at issue here, nor d[id] they even contain an actual assignment provision"); *cf.*, *e.g.*, *Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999) (assignment effective where language used included that copyright owner "sells, transfers, and assigns" all rights to the work "whether existing, contingent, expectant, or otherwise . . . including, without limitation . . . all existing or potential causes of action and claims including, without limitation, those for

infringement"); *Oceans of Images Photography, Inc. v. Foster & Smith, Inc.*, 2012 WL 5878092, at \*4 (M.D. Fla. Nov. 21, 2012) (holding that *nunc pro tunc* assignment memorializing prior oral copyright assignment established standing where assignment included "explicit language transferring causes of action for prior infringements").

In addition, "the copyright owner or exclusive licensee must have such status at the time of the alleged infringement." *World Thrust Films Inc. v. Int'l Family Entm't Inc.*, 1996 WL 605957, at \*4 (S.D. Fla. Aug. 1, 1996); *see also Lorentz v. Sunshine Health Products, Inc.*, 2010 WL 3733986, at \*8 (S.D. Fla. Aug. 27, 2010) ("If Plaintiff did not have the right to sue for accrued infringements at the time she filed this action, she lacks standing to maintain this action.") (citing *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir. 1969)). A *nunc pro tunc* assignment executed after litigation is commenced "cannot retroactively solve the standing problem that existed at the time the action was filed." *Triple Tee Golf, Inc. v. Nike*, Inc., 2007 WL 4260489, at \*22 (N.D. Tex. Aug. 10, 2007); *see also Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996) ("Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation."); *Imperial Residential*, 70 F.3d at 98-9 (affirming dismissal of suit brought on the basis that standing could be conferred by post-litigation memorialization of pre-litigation assignment).

Throughout the LED Complaint, PPI is alleged to be the owner of the copyrighted videos at issue. Indeed, the copyright registrations, applied for on April 3, 2014, were granted to PPI. *See* Illinois Action ECF No. [12-1] Exh. A (email confirmation of copyright status).[2]  However,

---

[2] The Court takes judicial notice of these public records. *See Universal Express, Inc. v. U.S. SEC*, 177 F.

LED, not PPI, asserts the copyright infringement claims in the LED Complaint.

LED maintains that PPI assigned its copyright ownership and right to sue for past infringements to LED prior to the time LED instituted the Illinois Action.  In support of that contention, it has submitted two documents:  (1) an Assignment of Rights/Choses in Action, wherein PPI "knowingly, voluntarily, and intentionally assign[ed] to [LED] any and all rights to any litigation related to AAdyn," dated and signed on April 4, 2014, Illinois Action ECF No. [1-1] (Assignment of Rights); and (2) a *Nunc Pro Tunc* Copyright Assignment entered into by PPI and LED, memorializing an oral agreement by PPI entered into on April 4, 2014 "to knowingly, voluntarily and intentionally assign to LED, any and all rights, titles, and interests in and to [the Videos] in conjunction with a right to sue," dated and signed on July 23, 2014.  Illinois Action ECF No. [18-1] (Copyright Assignment).

The Assignment of Rights cannot itself confer standing on LED to sue for infringement on PPI's copyrights.  The Assignment of Rights does not explicitly cover the right to sue for copyright infringement, let alone infringement with respect to the Videos.  Regardless, conveyance merely of a right to sue is alone insufficient to transfer exclusive rights and confer standing under the Copyright Act.  The Contursi Parties implicitly acknowledge this.  They introduced the *nunc pro tunc* Copyright Assignment only after the AAdyn Parties raised the standing issue in their motion to dismiss filed in the Illinois Action, and assert standing in opposition to the Motion to Dismiss on the basis of the Copyright Assignment.

However, the Copyright Assignment does not save LED's infringement claim.  Taking

---

App'x. 52, 53 (11th Cir. 2006) (courts may take judicial notice of public records); *Haddad v. Dudek*, 784 Fla. Supp. 2d 1308, 1324 (M.D. Fla. 2011) (court may take judicial notice of public documents without converting motion to dismiss into motion for summary judgment); *Hodge v. Orlando Utilities Comm'n*, 2009 WL 5067758, at *4 (M.D. Fla. Dec. 15, 2009) ("when considering a motion to dismiss, the Court may take judicial notice of the contents of relevant public records) (citing *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1280 (11th Cir. 1999)).

the document in a light most favorable to LED, the Copyright Assignment memorializes an oral agreement, entered into between PPI and LED at the same time they executed the Assignment of Rights, for transfer of "all rights, titles, and interests in and to" the Videos.[3]  But the Copyright Assignment post-dates commencement of the Illinois Action.  While a post-hoc memorialization of an oral assignment can satisfy the section 204 note or memorandum requirement, that later memorialization must still pre-date the litigation asserting the assigned rights in order to confer standing on the assignee.  As such, LED lacks standing to bring any action under the Copyright Act with respect to the Videos.  Accordingly, Court VIII, in as much as it is asserted on behalf of LED, must be dismissed with prejudice.  *See HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381 (7th Cir. 2011) (dismissal for lack of standing in copyright context must be with prejudice).

## 2. The Intracorporate Conspiracy Doctrine Bars the Civil Conspiracy Claims (Counts II and VI)

The Contursi Parties cannot state a cognizable claim for civil conspiracy under the facts alleged in the LED Complaint.

To plead civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong,* 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).  Under Florida law, "a conspiracy requires the combination of two or more persons – a meeting of two independent minds intent on one purpose."  *Cedar Hills Properties Corp. v.*

---

[3] The posture of the Motion to Dismiss allows the Court to avoid assessing the authenticity of the oral agreement, curiously made between the same parties alongside an actual, written agreement, and its convenient

CASE NO. 14-CIV-61376-BLOOM/Valle

*Eastern Federal Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991); *Buckner v. Lower Florida Keys Hospital Dist.*, 403 So. 2d 1025 (Fla. 1981).

"Just as it is not legally possible for an individual to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981)); *see also Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) ("[A]cts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy); *Cedar Hills*, 575 So. 2d at 676 ("Since a corporation is a legal entity which can only act through its agents, officers and employees, a corporation cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest.") (citing *Am. Credit Card Tel. Co. v. National Pay Tel. Corp.*, 504 So. 2d 486 (Fla. 1st DCA 1987) and *Garrido v. Burger King Corp.*, 558 So. 2d 79 (Fla. 3rd DCA 1990)). This concept is referred to as the intracorporate conspiracy doctrine. "Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Denny*, 247 F.3d at 1190.

In both of its conspiracy claims, LED alleges that Gallagher, Kaye and Lefler conspired with AAdyn to harm Contursi (inducing Contursi to provide business advice and consultation for AAdyn's benefit without ever intending to compensate Contursi) and PPI (inducing PPI to produce the Videos for AAdyn's benefit without ever intending to compensate PPI). *See* LED Compl. ¶¶ 75-66, 103-104. As elsewhere stated in the LED Complaint, Gallagher, Kaye and Lefler are the managing members of AAdyn. *Id.* ¶¶ 4-6. Because Gallagher, Kaye and Lefler

---

memorialization in the midst of litigation on the very issue it purports to resolve.

are members and/or employees of AAdyn, and, as specifically alleged in the LED Complaint, they acted to benefit AAdyn, they cannot have "conspired" together or with AAdyn to harm Contursi or PPI.

The Contursi Parties highlight an exception to the intracorporate conspiracy doctrine: "the intracorporate conspiracy doctrine does not apply to alleged intracorporate criminal conspiracies." *McAndrew*, 206 F.3d at 1034, 1038 (explaining that "just as the intracorporate conspiracy doctrine cannot shield a criminal conspiracy from prosecution under the federal criminal code, the doctrine cannot shield *the same conspiracy*, alleging *the same criminal wrongdoing*, from civil liability" under relevant law).  The exception would apply in cases which "involve evidence of conduct constituting a criminal conspiracy in violation of the federal criminal code." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1263 (11th Cir. 2010).  Unlike the case in *McAdrew* and as discussed in *Grider*, the allegations in the LED Complaint against the AAdyn parties regarding civil conspiracy do not amount to criminal activity in violation of a federal criminal statute.

Accordingly, the intracorporate conspiracy doctrine bars the two claims for civil conspiracy asserted here.

### 3.    The Fraud Claims are Insufficiently Pleaded (Counts I and V)

The Contursi Parties do not plead their claims for fraud with the requisite particularity.

### i.    Stating a Claim for Fraud

The essential elements to state a cause of action for fraud under Florida law are:

(1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person.

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 720 (11th

CASE NO. 14-CIV-61376-BLOOM/Valle

Cir. 2011) *rev'd in part on other grounds*, 563 F. App'x 665 (11th Cir. 2014) (citing *Gandy v. Trans World Computer Tech. Grp.*, 787 So. 2d 116, 118 (Fla. 2d DCA 2001); *Tucker v. Mariani*, 655 So. 2d 221, 225 (Fla. 1st DCA 1995); *see also Ward v. Atlantic Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001) ("The essential elements of a fraud claim are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the interpretation.").

### ii.    Rule 9(b) Heightened Pleading Standard

In addition to the Rule 8(a) plausibility pleading requirement, Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud:  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) thus forces a plaintiff to "offer more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud."  *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008).  "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires that the complaint state the "who, what, when where, and how" of the alleged misconduct).  The purpose of the Rule

26

9(b) particularity requirement is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *Zeimba*, 256 F.3d at 1202 (internal quotations omitted). "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (quotations omitted); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) ("The rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . .") (quotations omitted).

Additionally, "[i]n a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks*, 116 F.3d at 1381 (quotations omitted). "[L]umping together defendants in a fraud claim is insufficient." *Serefex Corp. v. Hickman Holdings, LP*, 695 F. Supp. 2d 1331, 1342 (M.D. Fla. 2010). Rule 9(b), therefore, requires a plaintiff to notify each defendant of its role in the alleged fraud and prevents a plaintiff from merely "lumping together" multiple defendants. *Brooks*, 116 F.3d at 1381.; *W. Coast Roofing*, 287 F. App'x at 86 ("generalized allegations 'lumping' multiple defendants together are insufficient").

### iii.   The Fraud Claims in the LED Complaint Fail to Satisfy Rule 9(b)

Both in terms of the requirement to plead fraud with particularity and in improperly lumping together the AAdyn Parties, the fraud claims asserted in the LED Complaint fail to satisfy Rule 9(b).

With respect to the fraud claims, the LED Complaint contains only the singular but

CASE NO. 14-CIV-61376-BLOOM/Valle

repeated allegation that the AAdyn Parties "represented" to Contursi that he would be "compensated for his business advice and consultation and that "those who work will get paid when Aadyn turns a profit," LED Compl. ¶¶ 64, 65, 69, 77; and that the AAdyn Parties "represented to PPI that it would be compensated for creating, directing and producing the Videos" and that "those who work will get paid when Aadyn turns a profit." *Id.* ¶¶ 92, 93, 98. Earlier in the Complaint, LED alleges that at a trade conference in August, 2013, Gallagher, responding to an inquiry from Contursi regarding payment for his business consultation, advice and assistance, replied, "When Aadyn turns a profit, those who have worked will get paid."[4]  *Id.* ¶ 37.  The most plausible reading of the LED Complaint, taking its allegations as true, is that Gallagher made that statement to Contursi, but the Contursi Parties hope to ascribe it to each of the AAdyn Parties.  This is the very definition of improper "lumping together" of multiple defendants.  *See Brooks*, 116 F.3d at 1381.; *W. Coast Roofing*, 287 F. App'x at 86; *Serefex*, 695 F. Supp. 2d at 1342.  Further, even taking the Gallagher statement as truly said, the LED Complaint provides no particularity as to the fraud allegation regarding PPI's copyrighted Videos.

The LED Complaint fails to plead with particularity as required by Rule 9(b).  It further obscures the roles the separate AAdyn Party defendants individually played in the alleged fraud, and fails to provide them fair notice of their alleged misconduct as required by Rule 9(b).  *See Great Florida Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588, **3-4 (S.D. Fla. Feb. 3, 2011) (references to defendants plead "in a way that obscures the identity of the party or

---

[4] In this narrow sense, the LED Complaint properly states a claim for fraud against Gallagher with respect to Contursi's alleged business consultation services.  It also plausibly may state a claim against AAdyn, acting through Gallagher, on the same basis.  *See, e.g., Braswell v. United States*, 487 U.S. 99, 110, (1988) ("Artificial entities such as corporations may act only through their agents.").  Since the Court is granting the Contursi Parties leave to amend, this issue is moot.

parties that are alleged to have actually committed the fraudulent actions . . . [and] that makes it impossible for Defendants to know which of the Defendants is alleged to have made the claimed statements"); *Joseph v. Bernstein*, 2014 WL 4101392, at *6 (S.D. Fla. Aug. 19, 2014) (pleading failed to state who, what, when, where and how of allegedly false statements); *Cordova v. Lehman Bros.*, 526 F. Supp. 2d 1305, 1313 (S.D. Fla. 2007) (combined defendants, rather than identifying specific misrepresentations or stating how actions attributable to individual defendant) *aff'd in rel. part sub nom. Puterman v. Lehman Bros.*, 332 Fed. App'x 549 (11th Cir. 2009).   The Contursi Parties will, therefore, be required to amend their pleading to state their fraud claim with respect to each of the AAdyn Parties with the requisite specificity.   *See, e.g.,* *F.D.I.C. v. Briscoe*, 2012 WL 8302215, at *8 (N.D. Ga. Aug. 14, 2012) (where defendants improperly lumped together, claims dismissed without prejudice and plaintiff granted leave to replead).

## IV.     RECOVERY UNDER 17 U.S.C. § 505

In their Motion to Dismiss, the AAdyn Parties request that the Court award them attorney's fees and costs pursuant to section 505 of the Copyright Act.  The Court agrees that an award of attorneys' fees is appropriate under the circumstances here.

Under the Copyright Act, district courts have the discretion to award prevailing parties their attorneys' fees.   17 U.S.C. § 505;[5] *Montgomery v. Noga*, 168 F.3d 1282, 1304 (11th Cir. 1999) (attorneys' fees may be assessed "as a matter of the court's discretion") (citation omitted). "The United States Supreme Court has held that successful plaintiffs and defendants are equally entitled to recover costs and attorney's fees under Section 505." *Lil' Joe Wein Music, Inc. v.*

---

[5] The statute provides, in full:  "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided

CASE NO. 14-CIV-61376-BLOOM/Valle

*Jackson*, 2008 WL 2688117, *4 (S.D. Fla. July 1, 2008) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)); *Indyne, Inc. v. Abacus Tech. Corp.*, 2014 WL 1400658, at *5 (M.D. Fla. Feb. 25, 2014) ("for the purposes of § 505 prevailing plaintiffs and prevailing defendants are to be treated alike") (citation omitted).  Courts award plaintiffs their "full costs and attorney's fees in order to: (1) deter future copyright infringement; (2) ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works; and (3) penalize the losing party and compensate the prevailing party." *Arista Records, Inc. v. Beker Enters.*, 298 F. Supp. 2d 1310, 1315 (S.D. Fla. 2003) (quotation omitted).  In *Fogerty*, the Supreme Court set forth nonexclusive factors to guide district courts considering an award of fees.  *See Indyne*, 2014 WL 1400658 at *5-6 (citing *Fogerty*, 510 U.S. at 535 n.19).  "These factors include frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 535 n.19 (internal quotation and citation omitted).  "[F]rivolousness . . . in copyright cases is usually found in cases in which the claimant does not even *own* the copyright in question or has granted a license to the alleged infringer but sues for infringement nonetheless." *Corwin v. Walt Disney World Co.*, 2008 WL 754697, at *6 (M.D. Fla. Mar. 18, 2008); *see also Amadasun v. Dreamworks, LLC*, 359 F. Supp. 2d 1367, 1373 (N.D. Ga. 2005) (holding claims to be frivolous where plaintiff brought a copyright infringement claim against the defendants despite the fact that he did not own, and knew, or should have known that he did not own, valid copyrights for works sued upon).  Further, "if a copyright claim is clearly without merit or otherwise patently devoid of

---

by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.

legal or factual basis, that claim ought to be deemed objectively unreasonable, and an award of fees and costs is then proper." *Chivalry Film Prods. v. NBC Universal, Inc.*, 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007); *see also Hermosilla v. Coca-Cola Co.*, 2011 WL 9364952, at *6 (S.D. Fla. July 15, 2011) (finding objective unreasonableness where litigant "in no way took a reasonable stand on an unsettled principle of law"); *Corwin*, 2008 WL 754697 at *10-11 (claim was objectively unreasonable where claimant faced "virtually insurmountable hurdles in pursuing his claims"); *Amadasun*, 359 F. Supp. 2d at 1376 (finding objective unreasonableness in part based on litigant's assertions of fact without any evidentiary support).

That said, "[i]n this circuit, a showing of bad faith or frivolity is not a precondition to awarding attorneys' fees." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 853 (11th Cir. 1990). Further, "[i]n copyright cases, although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *Arista Records*, 298 F. Supp. 2d at 1316.

The AAdyn Parties maintain that LED's copyright infringement claim is frivolous and objectively unreasonable. LED, as discussed above, had no ownership interest in the copyrights at issue when it commenced the Illinois Action, rendering its claim frivolous. *See Corwin*, 2008 WL 754697 at *6 (lack of copyright ownership points strongly to frivolousness); *Amadasun*, 359 F. Supp. 2d at 1373 (finding case frivolous where claimant did not own copyright). Further, LED sued only one day after sending the AAdyn Parties the Cease-and-Desist Letter with regards to their purported copyright interests. *See Dawes-Ordonez v. Forman*, 418 F. App'x 819, 821 (11th Cir. 2011) (affirming district court's award of fees to "deter copyright holders from filing such suits without first attempting to resolve the matter outside of court"); *Oravec v. Sunny Isles Luxury Ventures L.C.*, 2010 WL 1302914, at *4 (S.D. Fla. Mar. 31, 2010) ("decision

CASE NO. 14-CIV-61376-BLOOM/Valle

to forgo pre-suit discussions suggests improper motivation"). The AAdyn Parties further attack LED's motivation by suggesting that it asserted the copyright claim only to manufacture federal subject matter jurisdiction.

The Court adds that this is LED's third go-around on its defective copyright claim. PPI could have asserted the claim on its own behalf in the first instance (rather than executing the Assignment of Rights the same day as the LED Complaint was filed). LED could have amended its Complaint in the Illinois Action after the AAdyn Parties raised the standing issue back in June of 2014. Or, they could have done so when faced with the identical issue in the instant Motion to Dismiss. They chose to "triple-down" on their contention that LED is the proper party to the action. ECF No. [43] (AAdyn Parties' Repl.) at 3 n.2. Of course, the legal landscape with regard to memorialization of a transfer of copyright has not changed since they first initiated their action. *See Hermosilla*, 2011 WL 9364952, at *6 (claim objectively unreasonable where not based on plausible legal grounds).

All the same, whatever the merits of LED's copyright claim as asserted in the LED Complaint, some party will be able to assert claims under the Copyright Act with respect to the Videos – either in an amendment to the LED Complaint, or in responding to the AAdyn Complaint's declaratory claim regarding the very same copyright interests. The reality is that the AAdyn Parties would likely have expended, and will likely continue to dedicate, resources and time responding to copyright infringement claims based on their alleged use of the Videos.

Accordingly, the Court concludes that the AAdyn Parties shall be awarded attorneys' fees and costs, but only with respect to the duplicative round of briefing on the copyright issue.

## V.    CONCLUSION

With respect to the Motion for Default Judgment, the Clerk's entry of default will be

considered ineffective against the Contursi Parties with respect to Counts II and III of the AAdyn Complaint, and with respect to the entirety of the LED Complaint.  However, the Court's Order on Default Judgment and issuance of Final Default Judgment with respect to Count I of the AAdyn Complaint remain in force and effect.

With respect to the Motion to Dismiss, the claim for copyright infringement (Count VIII), as asserted by LED, is dismissed with prejudice.  The civil conspiracy claims (Counts II and VI) are dismissed without prejudice.  The Contursi Parties can conceivably state a claim for civil conspiracy (*e.g.*, that AAdyn's managing members acted only for their own benefit, and not for AAdyn's).  However, the Court cautions the Contursi Parties from contradicting their previous allegations of fact without a good faith basis to do so.  *See Univ. Creek Associates II, Ltd. v. Boston Am. Fin. Grp., Inc.*, 101 F. Supp. 2d 1370, 1373 (S.D. Fla. 2000) (imposing sanctions jointly and severally against party and its counsel where party amended pleading to allege facts contradicting those alleged in its initial pleading, finding that the party and its counsel lacked any good faith basis to assert the contradictory allegations and supporting claims).  Consistent with the foregoing, *see supra* § III.c.3.iii, the Contursi Parties are granted leave to amend the LED Complaint with regard to their fraud claims (Counts I and V).  Finally, the AAdyn Parties will be awarded attorneys' fees and costs under 17 U.S.C. § 505.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.    The Motion to Dismiss, ECF No. [32] is **GRANTED in part**, as follows:

    a.    Counts I, II, V and VI are **DISMISSED without prejudice**.

    b.    Count VIII, as asserted by LED, is **DISMISSED with prejudice**.

    c.    Costs will be assessed against LED under 17 U.S.C. § 505.  On or before **February 27, 2015**, the AAdyn Parties shall file a notice of

CASE NO. 14-CIV-61376-BLOOM/Valle

attorneys' fees and costs, applying the relevant factors to costs associated with the instant Motion to Dismiss.[6]  LED (or the Contursi Parties) shall respond on or before **March 6, 2015**.

2.      LED is granted leave to amend its Complaint by or before **March 9, 2015**. The Contursi Parties shall answer or respond to the declaratory claims in the AAdyn Complaint (Counts II and III) on or before **March 9, 2015**.

**DONE AND ORDERED** in chambers at Fort Lauderdale, Florida, this 17th day of February, 2015.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

---

[6] *See Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988) ("statutory attorneys' fee awards are calculated according to the lodestar method"); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974) (outlining the following relevant factors:  1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases).