UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:14-cv-61376-BB

PROFESSIONAL LED LIGHTING, LTD.,

       Plaintiff,

vs.

AADYN TECHNOLOGY, LLC,
FRANK GALLAGHER, MARC KAYE,
and WALTER LEFLER,

       Defendants.

_____/

AADYN TECHNOLOGY, LLC, a Delaware
Limited Liability Company; FRANK
GALLAGHER, a New Jersey citizen; MARC
KAYE, a Florida citizen; and WALTER
LEFLER, a New Jersey citizen,

       Plaintiffs,

vs.

PROFESSIONAL LED LIGHTING, LTD., an
Illinois company; PRODUCT
PRODUCTIONS, INC., an Illinois company;
and PHILIP CONTURSI, an Illinois citizen,

       Defendants.

_____/

**PLAINTIFFS/COUNTERDEFENDANTS'**
**NOTICE OF ATTORNEYS' FEES AND COSTS**

    Plaintiffs/Counterclaim Defendants, Aadyn Technology, LLC ("Aadyn"), Frank

Gallagher, Marc Kaye, and Walter Lefler, by and through their undersigned counsel, hereby file

their Notice of Attorneys' Fees and Costs, as directed by the Court's February 17, 2015 Order

granting in part Plaintiffs/Counterclaim Defendants' motion to dismiss and awarding reasonable attorneys fees and costs under 17 U.S.C. § 505.  *See* ECF No. [52].

## **MEMORANDUM OF LAW**

The proper considerations for an award in this context are the factors set forth in *Norman v. Housing Authority of the City of Montgomery*, 836 F. 2d 1292 (11th Cir. 1988) and the twelve factors in *Johnson v. Georgia Highway Exp.*, 448 F. 2d 714, 717-19 (5th Cir. 1974).[1]   In determining the prevailing market rate, courts typically consider certain factors: the attorney's customary fee; the skill required to perform the legal services; the attorney's experience; reputation and ability; the time constraints involved; preclusion of other employment; contingency; the undesirability of the case; the attorney's relationship to the client; and awards in similar cases.  *See Mallory v. Holmes*, 923 F. Supp. 1548, 1555 (S.D. Fla. 1996).

The Eleventh's Circuit's current standards for measuring attorney's fees are set out in *Norman*, in which the court surveyed the fee-award jurisprudence of both the Supreme Court and the Eleventh Circuit, and reiterated that a fee award should be based upon a multiplication of a reasonable hourly rate ("the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation"), by the number of "reasonable hours" billed, adjusting the resulting "lodestar" for the result obtained, the quality of representation and delay in payment.  *Norman*, 836 F. 2d at 1298-1299, 1302.  Although the balancing effect that previously was prescribed by *Johnson* has been replaced by the "lodestar" method, the 12 *Johnson* factors[2] still "might be considered in terms of their influence on the

---

[1]      *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) made binding on the Eleventh Circuit all decisions of the Fifth Court of Appeals decided prior to September 30, 1981.

[2]      The twelve *Johnson* factors, as summarized in *Dowdell v. City of Apopka, Fla.*, 698 F. 2d 1181, 1187, n. 8 (11th Cir. 1983), are:

lodestar amount." *Norman*, 836 F. 2d at 1229.  Although the Court's award of fees and costs was pursuant to 17 U.S.C. § 505 as opposed to any of the various civil rights acts, and as the Court directed, the same approach to calculating a fee award applies.  *See* ECF No. [52].

In sum, in considering an application for attorney's fees, courts typically apply the lodestar formula which assesses the reasonableness of the hours spent and the attorney's hourly rate.  *See American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423 (11th Cir. 1999) (using the lodestar method, a reasonable award of attorney's fees is "calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate" (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  A reasonable hourly rate is based on the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Johnson v. Corinthian Colleges, Inc.*, 2007 WL 2050985, *1 (M.D. Fla. July 17, 2007) (*citing Gaines v. Dougherty County Bd. of Educ.*, 775 F. 2d 1565, 1571 (11th Cir. 1985)).

---

    a.  the time and labor required;
    b.  the novelty and difficulty of the questions;
    c.  the skill requisite to perform the legal service properly;
    d.  the preclusion of other employment by the attorney due to the acceptance of the case;
    e.  the customary fee;
    f.  whether the fee is fixed or contingent;
    g.  time limitations imposed by the client or the circumstances;
    h.  the amount involved and the results obtained;
    i.  the experience, reputation and ability of the attorneys;
    j.  the "undesirability" of the case;
    k.  the nature and length of the professional relationship with the client; and
    l.  awards in similar cases.

A.      **Establishing the reasonable hourly rate**

"Common sense dictates that the 'going rate' in the community is in actuality the most critical factor in determining a reasonable fee."  *Martin v. U. of S. Ala.*, 911 F. 2d 604, 610 (11th Cir, 1990).  As stated in *Norman:*

> [T]he applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates.  *NAACP v. City of Evergreen*, 812 F. 2d 1332, 1338 (11th Cir. 1987).  Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. *See Hensley*, 461 U.S. at 439 n. 15, 103 S.Ct. at 1943 n. 15. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

836 F. 2d at 1299.

Central to the determination of a lawyer's worth is an assessment of the lawyer's skill. This criterion is addressed to the trial judge's assessment of the attorney based on his observation of the "the attorney's work product, his preparation, and general ability before the court." *Johnson*, 488 F. 2d at 718.  In making this assessment, the judge is to apply his expertise gained from his career as both a lawyer and a judge.  *Id.*  This criterion asks, initially, whether plaintiff's counsel was competent and experienced to do the job assigned and, thereby, whether he or she is deserving of the going commercial rate for lawyers engaged in litigation in federal court.

As it is for the jury to remember testimony presented, it is for the court to remember the performance of counsel:

> Throughout, and particularly if litigation is begun, the word "skill" incorporates the notions of organization and efficiency. An attorney of great skill organizes his thoughts, his work, and his presentation in a logical and orderly way without lost

4

motion or false starts so that each move builds upon the last to the achievement of the goal. Organization means that discovery devices and motions are thought out and not utilized in a random and erratic way or for the mere purpose of going through established routines. Efficiency means doing well just what ought to be done and doing it in a minimum of time.

The underpinning for these facets of legal skill is knowledge, knowledge of trial practice and knowledge of the substantive law. A lawyer who has to educate himself generally in either or both of these two areas may ultimately be as effective as a specialist, but he has no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case.

*Norman*, 836 F. 2d at 1300-1301.

Specialization, and the attendant economies of time that result, is a ground for awarding an hourly rate at the high end of the spectrum.  For as the court observed in *White v. State of Ala.*, 1996 WL 378235, *5 (M.D. Ala. 1996), a voting rights case in which the court found that the plaintiff's attorneys' "expertise enabled them to prosecute this case very efficiently:"

Attorneys with less knowledge and experience would have taken many more hours to pursue this litigation. Therefore, Agricola's and Jordan's "efficiency justifies an hourly rate at the high end of the customary range." *Gay Lesbian Bisexual Alliance v. Sessions*, No. 93-T-1178-N, --- F. Supp. ----, ---- (M.D. Ala. June 6, 1996); *see also Coleman v. Cannon Oil Company*, 911 F. Supp. 510, 515 (M.D. Ala.1995) ("A lawyer already skilled in the area could demand a higher rate because he or she would be more knowledgeable and could work more efficiently"); *Dillard v. City of Elba*, 863 F. Supp 1550, 1553 (M.D. Ala.1993) (experienced attorneys prosecuted case in fewer hours than inexperienced attorneys would have); *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F. Supp. 1061, 1071 (M.D. Ala.1988) (attorney's "inexperience should be reflected in [lower] ... hourly rate"), *aff'd*, 891 F.2d 842 (11th Cir.1990).

1996 WL 378235, *5.

Evidence of comparable skill should be defined in terms of length and type of experience, education, professional accomplishments and reputation.  *Perkins v. Mobile Housing Authority*, 847 F. 2d 735, 737, n.1 (11th Cir. 1988).   The Court should also analyze the skills of organization, efficiency, knowledge of trial practice, knowledge of substantive law and

persuasiveness in determining the skill level of the lawyer seeking an award of attorney's fees. *Norman*, 836 F. 2d at 1299.

Here, three attorneys were involved in the preparation of the motion to dismiss LED's improper copyright claims: lead litigation counsel Darth M. Newman, associate litigation counsel Kate A. Sozio, and local counsel Robin I. Frank.

Mr. Newman is an associate in the Haddonfield, New Jersey law firm Archer & Greiner, P.C. whose practice is devoted to intellectual property litigation. Mr. Newman has been licensed to practice in the State of New Jersey and the Commonwealth of Pennsylvania since 2008. He is admitted to practice before the United States Court of Appeals for the Sixth Circuit and the United States District Courts of the Eastern District of Pennsylvania and the District of New Jersey. In addition he has been admitted *pro hac vice* in the Delaware Chancery Court, the District Court for the Northern District of Ohio, the Southern District of New York and this Court.

Ms. Sozio is also an associate at Archer & Greiner, P.C. who also practices primarily intellectual property litigation. Ms. Sozio has been licensed to practice law in the State of New Jersey and the Commonwealth of Pennsylvania since 2012. She has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and New Jersey.

Ms. Frank is a partner at Shapiro, Blasi & Wasserman, P.A. whose practice is predominately devoted to federal litigation matters. Ms. Frank has been licensed to practice law in the State of Florida since 2003, and is admitted to practice law in the United States Court of Appeals, Eleventh Circuit, and the United States District Court, Southern and Middle Districts of Florida. In addition, Ms. Frank is a member in good standing of the Florida Bar and Federal Bar

6

and has been recognized as a "top up-and comer" and "rising star" in the South Florida Legal Guide and Florida Super Lawyer's Magazine.

Mr. Newman seeks an hourly rate of $295.00 per hour, Ms. Sozio seeks an hourly rate of $220.00 per hour, and Ms. Frank seeks an hourly rate of $325.00 for their time worked on Plaintiffs/Counterclaim Defendants' motion to dismiss LED's copyright allegations which is in line with prevailing market rates for attorneys of comparable skill and experience. *See* Affidavit of Ellen M. Leibovitch, attached hereto as Exhibit "B". Again, Plaintiff would not have incurred any of the fees and costs set out in this notice had it not been for LED's insistence on litigating a claim of copyright infringement for which they had no standing.

Finally, the Affidavit of Ellen M. Leibovitch indicates that she has reviewed the files of Plaintiffs/Counterclaim Defendants' counsel, Plaintiffs/Counterclaim Defendants' counsels' Affidavits and the original time records. She is familiar with Ms. Frank's experience, her reputation in the community, her skills and experience, and the hourly rate received by those lawyers for work of equal quality as that performed in the present case. While she has not met Mr. Newman or Ms. Sozio, she has reviewed the affidavit of Darth M. Newman, reviewed the billing records from the firm Archer & Greiner, P.C., the biographies of the attorneys from Archer & Greiner, P.C. whose time has been included in this Notice (Mr. Newman and Kate Sozio), the relevant file and docket materials in this matter, including materials in the Northern District of Illinois cause which was ultimately consolidated into this action. It is the opinion of Ellen M. Leibovitch that a reasonable prevailing market rate in our local community for services similar to those performed by Ms. Frank in the present case by a lawyer with reasonable comparable skills, experience and reputation is $325.00 per hour. It is also her opinion that a

reasonable prevailing market rate in our local community for services similar to those performed by Mr. Newman and Ms. Sozio in the present case by lawyers with reasonable comparable skills, experience and reputation are $295.00 and $220.00 per hour, respectively.  She is also of the opinion that the work performed in connection with Plaintiffs/Counterclaim Defendants' Motion to Dismiss was kept to a minimum of what was reasonable and necessary and no unnecessary work was undertaken.  She examined the time listed on the billing recaps of hours expended on this file and compared it to the actual materials filed and is of the opinion that work was done efficiently and without undue prolongation of effort, was not redundant, reflects a distinct contribution to the case and is within the customary practice in this area of the law as is practiced in the tri-county area.  *See* Exhibit "B" at ¶ 7-10.

Plaintiffs/Counterclaim Defendants' counsels' skill and experience, as well as counsels' time and the costs incurred are more fully described in the Affidavits of Attorneys' Fees and Costs, attached hereto as Composite Exhibit "A" and incorporated herein by reference.

**B.  Assessing a reasonable number of hours**

In determining a reasonable number of hours to assign to a case, a fee applicant, and the court, should attempt to arrive at the number of hours that a lawyer would "bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis"– and excluding, in an exercise of "sound billing judgment," all other time.  *Norman*, 836 F. 2d at 1301.  In other words, counsel for prevailing plaintiffs should be paid as is traditional with attorneys compensated by a fee paying client for all time reasonably expended on a matter.  *Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989).

8

Time records were kept in this matter meticulously by each attorney, who, upon rendition of a particular service, entered his or her time directly into the computer billing program. The program keeps track of this information and generates monthly reports, which are then transformed into billing statements. The information on the billing statements is double checked by the billing attorney prior to being sent to the client as the final billing statement. *See* Composite Exhibit "A."

The bills attached to Plaintiffs/Counterclaim Defendants' counsels' Affidavits reflect time entries incurred for the motion to dismiss of 31 hours of attorney time at the rate of $295.00 per hour ($9,145.00), 48 hours of attorney time at the rate of $220.00 per hour ($10,560.00), and 10.8 hours of attorney time at $325 per hour ($3,510.00). The total amount of fees ($23,215.00) incurred in connection with the preparation of Plaintiffs/Counterclaim Defendants' Motion to Dismiss were reasonably incurred as reflected by the attached affidavit. *See* Composite Exhibit "A."

In addition, bills attached to Plaintiffs/Counterclaim Defendants' counsels' Affidavits reflect time entries incurred for the preparation of this Notice of Fees of 2.5 hours of attorney time at the of $295.00 per hour ($737.50) 4 hours of attorney time at $325 per hour ($1,300.00). Finally, Mr. Newman and Ms. Sozio worked an additional 5.8 hours at $295.00 per hour and 3.6 hours at $220.00 per hour respectively to prepare this Notice of Fees but Archer & Greiner's accounting software cannot print those hours to a bill until early next week. These additional hours amount to $1,711.00 and $792.00 of fees respectively. All told, Plaintiffs/Counterclaim Defendants incurred $4,540.50 in attorney time charges in connection with the research and preparation of this Notice of Fees. *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281,

1297 (M.D. Fla. 2000) (awarding attorneys fees reasonably incurred for the preparation and litigation of a fee application where the entitlement to fees had already been determined); *see also Jean v. Nelson*, 863 F.2d 759, 780 (11th Cir. 1988) (awarding reasonable attorneys fees and fees for litigating the fee application because "it would contravene Congress's purpose in passing the Equal Access to Justice Act to require under all circumstances that successful EAJA fee applicants bear the costs of obtaining EAJA fees.").

Sworn testimony by counsel regarding the hours incurred litigating this case is evidence of considerable weight of the time required and it must appear that the time is obviously and convincingly excessive to reduce the hours. *Perkins*, 847 F. 2d at 738.

Moreover, as the time records indicate, only one attorney has claimed time in association with any particular task; therefore, no reduction is warranted for duplicative time.

Attached to this motion is the Affidavit of Ellen M. Leibovitch. Ms. Leibovitch has reviewed the files of Plaintiffs/Counterclaim Defendants' counsel, Plaintiffs/Counterclaim Defendants' counsels' Affidavits and the billing records for the subject motion and is of the opinion that the work performed was kept to a minimum of what was reasonable and necessary, no unnecessary papers were filed and no unnecessary work was undertaken and that work was done efficiently and without undue prolongation of effort, was not redundant, reflects a distinct contribution to the case and is within the customary practice in this area of the law as is practiced in the tri-county area. *See* Exhibit "B."

"District courts must differentiate, where possible, between attorney time connected with claims that give rise to attorney's fees and attorney time spent on non-compensable claims." *Costa v. Datapro, Inc.*, 2012 U.S. Dist. LEXIS 21809, at *12-15 (S.D. Fla. Feb. 22, 2012); *see*

*also Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000) ("In an award of 'reasonable attorney fees' pursuant to the Lanham Act, a party cannot recover legal fees incurred in litigating non-Lanham Act claims unless 'the Lanham Act claims and non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on [the separate] claims.'") (quoting John W. Crittenden & Eugene M. Pak, Monetary Relief Under Lanham Act Section 35, in Litigating Copyright, Trademark & Unfair Competition Cases for the Experienced Practitioner 1998, at 419 (PLI Pat., Copyrights, Trademarks and Literary Property Course Handbook Series No. 537, 1998)). "The key factor in apportioning attorney's fees is . . . whether it is possible to distinguish between the work that the attorney spent on the different claims." *Costa*, 2012 U.S. Dist. LEXIS 21809 at *14. "Sometimes, the underlying conduct will be the same for the compensable and the non-compensable claims, which will translate into a finding that it is impossible to apportion the work performed on the different claims." *Id.* at *14 (holding that "Datapro's common law counterclaims were so inextricably intertwined with its Lanham Act and FUTSA claims that it is not possible to make a meaningful adjustment for the work done on each claim."); *Davis v. Tampa Bay Arena, Ltd.*, 2013 U.S. Dist. LEXIS 154212, at *5-6, (M.D. Fla. Oct. 28, 2013) (declining to apportion costs because "the copyright claim, on which the Forum was successful, is inextricably intertwined with the other remaining claims."). However, the fact that the same conduct underlies compensable and non-compensable claims does not automatically entitle a prevailing party to all of its fees. If the Court reviews the fee ledgers and can meaningfully apportion work spent on compensable claims vs. work spent on non-compensable claims, then the court may reduce the fees award accordingly. *Costa*, 2012 U.S. Dist. LEXIS 21809 at *14-15.

Here, Defendants/Counterclaim Plaintiffs' conduct forced Plaintiffs/Counterclaim Defendants to expend resources fully briefing a motion to dismiss while also opposing Defendants/Counterclaim Plaintiffs' response to the Court's Order to Show Cause. All of these briefs involved overlapping and intertwined issues.[1] Naturally then, some time entries which have been incorporated into this Notice may arguably have applied to the copyright portion of Plaintiffs/Counterclaim Defendants' motion to dismiss as well as other portions of the simultaneous motion practice. We have carefully reviewed the billing records to exclude time entries unrelated to LED's copyright claims.

Indeed, we have exercised billing judgment by excluding 16.2 hours of time that was spent researching and drafting the motion to dismiss but which we were able to determine were expended working on portions of the motion to dismiss which are unrelated to LED's copyright claims. In addition, one half hour of Ms. Sozio's February 2, 2015 time entry was spent researching Florida service of process law, but this time was not included in the 48 hours we are seeking through this Notice. We have also excluded from this Notice all of the time spent by Richard J. Contant, the partner at Archer & Greiner, P.C. who is ultimately responsible for Plaintiffs/Counterclaim Defendants' representation. Mr. Contant is a very experienced attorney, he has been practicing since 1963, and his time is charged to Plaintiffs at $450 per hour. However, because Mr. Contant performed a supervisory role and not a lead litigator role with respect to the motion to dismiss, none of his fees are included in this Notice.

---

[1] Just two weeks ago Defendants/Counterclaim Plaintiffs again raised settled legal questions in yet another round of motion practice which will require Plaintiffs/Counterclaim Defendants to brief, for the third or fourth time, some of these same interrelated issues. *See* ECF No. [51].

**C.**    <u>**Adjusting the lodestar**</u>

Plaintiffs/Counterclaim Defendants are not seeking an upward adjustment of the lodestar. Rather, Plaintiffs/Counterclaim Defendants are simply seeking compensation for all hours reasonably expended. *Norman*, 836 F. 2d at 1302.

**D.**    <u>**Treating litigation expenses**</u>

In addition to their reasonable attorneys' fees, the Court has awarded Plaintiffs/Counterclaim Defendants their costs which amount to $194.40 for Lexis charges related to the preparation of the Motion to Dismiss. *See* Composite Exhibit "A." *Dowdell*, 698 F. 2d at 1192; *see also Cullens v. Ga. Dept. of Transp.*, 29 F. 3d 1489, 1494 (11th Cir. 1994); *Johnson*, 706 F. 2d at 1209 (computerized research costs may be recoverable). In addition, Plaintiffs/Counterclaim Defendants incurred $124.24 in Lexis charges preparing this Notice. *See George*, 114 F. Supp. 2d at 1297.

<u>**TOTAL FEE AWARD**</u>

In accordance with their duties as attorneys, attorneys for Plaintiffs/Counterclaim Defendants expended 89.8 hours briefing Plaintiffs/Counterclaim Defendants' motion to dismiss LED's copyright allegations for a total of $23,215.00 in legal fees and Plaintiffs/Counterclaim Defendants' counsels' firms incurred costs and out-of-pocket expenses in the amount of $194.40 for which they seek reimbursement. Additionally, attorneys for Plaintiffs/Counterclaim Defendants expended 15.9 hours preparing this Notice of Fees for a total of $4,540.50 in legal fees and Plaintiffs/Counterclaim Defendants' counsels' firms incurred costs and out-of-pocket expenses in the amount of $124.24 for which they seek reimbursement.

Counsels' time and the costs incurred are more fully described in the Affidavits of Attorneys' Fees and Costs, attached hereto as Composite Exhibit "A" and incorporated herein by reference. Attached hereto as Exhibit "B" is the Affidavit of Ellen M. Leibovitch, attesting to the reasonableness of the attorneys' fees requested.

<u>**CONCLUSION**</u>

WHEREFORE, Plaintiffs/Counterclaim Defendants respectfully request that this Honorable Court enter an Order requiring Professional LED Lighting, Ltd to pay $27,755.50 in attorneys' fees and $318.64 in costs.

Dated:   February 27, 2015            Respectfully submitted,
         Boca Raton, FL

                                     *s/ Robin I. Frank*
                                     ROBIN I. FRANK, ESQ.
                                     Florida Bar No. 0649619
                                     E-Mail: rifrank@sbwlawfirm.com
                                     SHAPIRO, BLASI & WASSERMAN, P.A.
                                     7777 Glades Road, Suite 400
                                     Boca Raton, FL  33434
                                     Phone: (561) 477-7800/Fax: (561) 477-7722
                                     Counsel for Plaintiffs/Counterclaim Defendants

                                     and

                                     *s/ Darth M. Newman*
                                     DARTH M. NEWMAN, ESQ.
                                     New Jersey Bar No. 032282008
                                     E-Mail: dnewman@archerlaw.com
                                     ARCHER & GREINER, P.C.
                                     One Centennial Square
                                     Haddonfield, NJ 08033
                                     Telephone:     (856) 673-3905
                                     Facsimile:     (856) 673-7035
                                     Counsel for Plaintiffs/Counterclaim Defendants
                                          (*Pro Hac Vice*)

2

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Robin I. Frank*
ROBIN I. FRANK, ESQ.

## SERVICE LIST

*Professional LED Lighting, Inc. v. Aadyn Technology, LLC, et al.*
*AAdyn Technology, LLC, et al. v. Professional LED Lighting, Ltd., et al.*
Case No. 0:14-cv-61376-BB
United States District Court, Southern District of Florida

| | |
|---|---|
| Robin I. Frank, Esq.<br>E-Mail: rifrank@sbwlawfirm.com<br>Aram C. Bloom, Esq.<br>E-Mail: acbloom@sbwlawfirm.com<br>Adam S. Chotiner, Esq.<br>E-Mail: aschotiner@sbwlawfirm.com<br>Shapiro, Blasi & Wasserman, P.A.<br>7777 Glades Road, Suite 400<br>Boca Raton, FL 33434<br>Telephone: (561) 477-7800<br>Facsimile: (561) 477-7722<br>Counsel for Plaintiffs/Counterclaim<br>Defendants<br>*Via CM/ECF* | Darth M. Newman, Esq.<br>E-Mail: dnewman@archerlaw.com<br>Archer & Greiner, P.C.<br>One Centennial Square<br>Haddonfield, NJ 08033<br>Telephone: (856) 673-3905<br>Facsimile: (856) 673-7035<br>Counsel for Plaintiffs/Counterclaim<br>Defendants (*Pro Hac Vice*)<br>*Via CM/ECF* |
| Eric Lee, Esq.<br>E-Mail: lee@leeamlaw.com<br>Lee & Amtzis, P.L.<br>5550 Glades Rd., Suite 401<br>Boca Raton, FL 33431<br>Tel: (561) 981-9988<br>Counsel for Defendants/Counterclaim | William J. Delaney, Esq.<br>E-Mail: bill@delaney-law.com<br>Delaney Law<br>444 N. Wabash Ave., 3rd Floor<br>Chicago, IL 60611<br>Tel: (312) 276-0263<br>Counsel for Defendants/Counterclaim |

3

| Plaintiff<br>*Via CM/ECF* | Plaintiff (*Pro Hac Vice*)<br>*Via CM/ECF* |
| --- | --- |

4